**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Plainview Milk Products Cooperative, being sued as Plainview Milk Cooperative, a Minnesota non-profit cooperative,

Plaintiff,

v.

Westport Insurance Corporation, a New York Stock Company,

Defendant.

Civil No. 01-63 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Edward F. Fox, Esq., Oppenheimer Wolff & Donnelly, 3400 Plaza VII Building, 45 South Seventh Street, Minneapolis, MN 55402, appeared on behalf of Plaintiff.

Daniel Aronowitz, Esq., Ross Dixon & Bell, 2001 K Street Northwest, Suite 400, Washington, D.C. 20006-1040, and Patrick Robben, Esq., Rider Bennett Egan & Arundel, 2000 Metro Center, 333 South Seventh Street, Minneapolis, MN 55402, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on November 16, 2001, pursuant to cross-motions for summary judgment. For the reasons stated, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.

## Background

Plaintiff Plainview Milk Cooperative ("Plainview") is a nonprofit cooperative which sells the milk of its member dairy farmers to various milk processing companies. Marigold Foods, Inc. ("Marigold") is one of the milk processors to whom Plainview sells milk. Over the course

FILED NOV 2 1 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD NOV 2 1 2001
DEPUTY CLERK

of approximately five years, Plainview inadvertently overcharged Marigold. The excess money collected by Plainview was distributed to Plainview's cooperative members.[1]

When the billing errors were discovered, Marigold demanded reimbursements for the overpayments from Plainview. Plainview entered into a settlement agreement with Marigold; under the terms of that agreement, Plainview agreed to pay Marigold $750,000 over the course of five years.

Plainview then sought indemnification of the $750,000 under Plainview's error's and omissions insurance policy from Defendant Westport Insurance Corporation ("Westport"). Westport denied Plainview's claim, and Plainview commenced the current declaratory judgment action against Westport.

Plainview originally obtained nonprofit organization liability insurance from Coregis Insurance Company ("Coregis"). Coregis issued two identical policies (hereinafter, collectively, "the Coregis policy") to Plainview for the policy years October 1, 1997, through October 1, 1998, and October 1, 1998, through October 1, 1999. Following a corporate acquisition, Westport assumed the underwriting of all of Coregis's former insurance business. Accordingly, Westport issued two policies to Plainview for the policy years October 1, 1999, through October 1, 2000, and October 1, 2000, through October 1, 2001; these policies (hereinafter,

---

[1] In oral argument on these motions, Plainview argued that this was not a simple case of over-billing. Indeed, the USDA heavily regulates the milk industry, and the overcharge to Marigold actually occurred because both Plainview and the USDA were charging Marigold the same fee. There is no question that Plainview's error was inadvertent or that the error was the result of the complex regulatory scheme governing milk sales. The end result, however, was that Plainview charged Marigold more than it should have, and the excess monies collected by Plainview were distributed to Plainview's cooperative members. *See* Ex. H to the Declaration of Timothy C. Krsul in Support of Plainview's Motion for Summary Judgment.

collectively, "the Westport policy") are identical to one another, but they are worded somewhat differently than the Coregis policy.

**Discussion**

**1. Summary Judgment Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Generally, the moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957. Here, however, the parties agree that summary judgment is appropriate because the sole question involves interpretation, as a matter of law, of an insurance policy.

**2. Which Policy Applies?**

Plainview asserts that the Westport policy represents a substantial reduction in coverage from the Coregis policy. According to Plainview, because Westport substantially reduced coverage without notifying Plainview of the coverage change, the changes are void and coverage should be determined under the Coregis policy. *See Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 575 (Minn. 1977) (if an insurer substantially reduces coverage without notifying the insured, the changes to the policy are void).

Westport argues that the Westport policy and the Coregis policy are essentially the same and that the changes in wording between the two have no effect on the scope of coverage. Thus, Westport asserts that the Court should properly consider the Westport policy but that there is no coverage under either policy.

The Court need not squarely address whether the Coregis policy and the Westport policy provide the same coverage. If Plainview is correct about the scope issue, then the Court should look at the Coregis policy. However, if Westport is correct about the scope issue, then is should not matter whether the Court looks at the Westport language or the Coregis language. Thus, no matter who is correct, the Court may properly limit its inquiry to the Coregis policy. In other words, the issue of which policy the Court considers is only determinative if, in fact, the Westport and Coregis policies are different, and, if they are different, the Court should look at the Coregis policy. Thus, for purposes of the summary judgment motions, the Court limits its inquiry on the issue of coverage to the Coregis policy.

**3. Is There Coverage?**

The parties have spent a great deal of time debating the meaning of many of the policy terms and the application of a variety of policy provisions. Ultimately, however, the Court finds

that there is no coverage for the disputed claim because that claim falls within the scope of Exclusion A of the Coregis policy.

Exclusion A excludes coverage for "[a]ny claim based upon, alleging or arising out of the gaining of any personal profit or advantage to which the insured is not legally entitled" (emphasis deleted). The claim at issue is based upon an allegation that Plainview, the insured, obtained money to which it was not legally entitled. Thus, on its face, Exclusion A applies.

Plainview argues that Exclusion A does not apply because it is triggered only when a natural person obtains a profit or advantage to which it is not legally entitled. Here, no insured natural person obtained any profit or advantage; rather, Plainview, as a corporate entity, obtained the profit or advantage. Plainview's argument is based on the fact that "profit" and "advantage" are modified by the term "personal," which, Plainview asserts, implies application only to natural persons. The Court does not agree with Plainview's logic.

First, Plainview contends that "[p]rofit by officers and directors is the only circumstance in which this exclusion has been applied." Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment at 18, n.6. In support of that proposition, Plainview relies upon *National Unity Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*, 666 F. Supp. 1180 (N.D. Ill. 1987), and *In re Donald Sheldon & Co., Inc.*, 186 B.R. 364 (S.D.N.Y. 1995). In these cases, the courts were called upon to determine the applicability of similar exclusions in situations where the alleged profit was had by individual directors of the insured corporations. However, the cases do not squarely address the question of whether the exclusion could or would apply if the alleged profit was had by the insured corporation itself.

Moreover, in *Harrisburg Area Community College v. Pacific Employers Ins. Co.*, 682 F. Supp. 805, 812-813 (M.D. Pa. 1988), the court considered whether an exclusion for claims

based on personal profit and advantage applied to a claim that a community college–not a natural person–erroneously received federal Pell grant money. Although the *Harrisburg* court determined that the exclusion did not apply to the facts of that case, its decision was not based upon the fact that the insured entity which allegedly profited was not a natural person. Rather, the discussion in that case appears to presuppose that the exclusion could apply to profit or advantage accruing to the insured entity, and the court simply found that there was no such profit or advantage.

On its face, Exclusion A applies to any claim in which an insured acquires profit or advantage to which it is not legally entitled. Plainview, as a corporate entity, is an insured. The Court finds no reason, in either the policy language itself or the cases cited by Plainview, to limit the definition of "insured" for purposes of Exclusion A to natural persons.

Plainview further argues that Exclusion A does not apply because it did not obtain any profit from its overcharge of Marigold. Plainview is a nonprofit entity which, by definition, cannot enjoy a profit; indeed, Plainview did not retain the money it overcharged Marigold, but, instead, disbursed those additional funds to its member farmers. According to Plainview, because of this disbursement, Exclusion A does not apply.

The Court does not agree. First, as Westport points out, the simple fact that Plainview did not retain its unearned profit does not mean that it did not receive such a profit. To borrow an apt analogy from Westport, if a man steals money and then loses it at the track, he nevertheless stole the money; he reaped an unearned profit even if he proceeded to lose that money the very same day.[2] Westport further argues, with some merit, that the profit of

---

[2] Obviously, there is no allegation that Plainview obtained any money through a (continued...)

Plainview's member farmers is legally equivalent to the profit of Plainview itself because, as a nonprofit cooperative, Plainview *is* its member farmers.

Yet even if the overcharged amount does not constitute a "profit" within the meaning of Exclusion A, it certainly constitutes an "advantage." Plainview's ability to provide its membership with dividends is, without question, a corporate advantage. Here, it was a corporate advantage to which Plainview was not legally entitled.

Because the Court finds that, on its face, Exclusion A applies to the claim at issue, the Court need not address the varied and creative claims of the parties regarding the meaning of the term "loss," the scope of the "non-monetary claims" provision, and the application of public policy to the situation at hand. The Court finds that, because of the operation of Exclusion A, there is no coverage for the claim at issue.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. No. 22) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 27) is **GRANTED**;

3. The **COMPLAINT** is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 21, 2001

DONOVAN W. FRANK
Judge of United States District Court

---

[2](...continued)
criminal act or other malfeasance. There is no question that the overcharge to Marigold was an innocent and understandable error.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov